**NATIONAL LABOR RELATIONS
BOARD, Petitioner,**

v.

**UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, LOCAL # 1913, AFL–CIO, Respondent,**

and

**Carpenters Pension Trust for Southern California and Its Trustees J. W. Bernard et al., Intervenors.**

No. 74–3273.

United States Court of Appeals,
Ninth Circuit.

Feb. 12, 1976.

Elliott Moore, Dep. Assoc. Gen. Counsel (argued), NLRB, Washington, D. C., for petitioner.

Leo Geffner (argued), of Geffner & Saltzman, Los Angeles, Cal., for respondent.

James P. Watson (argued), of Cox, Castle, Nicholson & Weeks, Los Angeles, Cal., for intervenors.

## OPINION

Before BROWNING and SNEED, Circuit Judges, and SMITH,* District Judge.

SNEED, Circuit Judge:

This case is before us upon an application by the National Labor Relations Board (the Board) for enforcement of its Supplemental Decision and Order for back pay and pension benefits due a worker who was the object of union discrimination. For the reasons hereinbelow stated the Board's supplemental order will be enforced in part, reversed in part, and modified in part.

In the initial proceeding in this matter, the Board found that as a result of unfair labor practices by the Carpenters, Local # 1913 (the Union), Michael R. Amato was discriminated against by several employers. The Board issued an order requiring the Union, *inter alia,* to make Amato whole for any loss of earnings resulting from the discrimination against him and to notify in writing the employers concerned that it had no objection to the employment of Amato. 189 NLRB 521 (1971). This Court granted the Board's application for the enforcement of that order. 464 F.2d 1395 (1972).

When the parties were unable to agree upon the amount of back pay due, the Board, pursuant to proper procedure, issued a Supplemental Decision and Order, 213 NLRB No. 53, which affirmed the findings and conclusions of the administrative law judge, and adopted his recommended order awarding to Amato back pay in the amount of $12,088.34 and pension contributions in the amount of $1,147.30 with interest on both amounts. In addition the Board ordered the Union to restore those rights under the pension plan which would have accrued to Amato if his employment had continued without interruption during the period which it had caused discrimination against Amato to occur. The Board further found that the Carpenters Pension Trust for Southern California (the Pension Trust)

---

* Honorable Russell E. Smith, Chief Judge of the United States District Court for the District of Montana, sitting by designation.

and its trustees, who appeared as interested parties, were agents of the Union, and as such, ordered them to accept payment of the amount awarded to Amato for credit to his already established Pension Trust account and to administer said account as though such payment was made by an employer-contributor.

The Board petitions for the enforcement of its Supplemental Decision and Order, the Union disputes the amount of back pay awarded, and the trustees of the Pension Trust, having been granted leave to intervene by this Court, question the designation of the Pension Trust as an agent of the Union and the power of the Board to order it to accept and administer back pay contributions from unions on behalf of a discriminatee.

## I. *The Back Pay Award.*

The Union contests neither the finding of discrimination nor the formula selected by the Board to calculate the amount of back pay due. The Union does, however, contend that Amato is not entitled to the amount awarded, arguing that the Board erred both in its determination of the period for which back pay should be awarded, and in its conclusion that Amato undertook a reasonable and diligent search for other employment.

■ It is well settled that in an unfair labor practice proceeding before the Board the burden is upon the General Counsel of the Board to establish by a preponderance of evidence that there has been an unfair labor practice, that there should be an award of back pay, and, pursuant to the Board's rules (29 C.F.R. Sec. 102.53), the gross amount of back pay due. *NLRB v. Brown & Root, Inc.,* 311 F.2d 447 (8th Cir. 1963). The burden then shifts to the discriminating employer or union to prove circumstances which would limit its liability. *NLRB v. Brown & Root, Inc., supra; NLRB v. Superior Roofing Company,* 460 F.2d 1240 (9th Cir. 1972). The Board's conclusions concerning whether these matters have been successfully established will be overturned on appeal only if the record, considered as a whole, shows no substantial evidence to support the Board's findings. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

■ We have carefully reviewed the record before us, and conclude that there is substantial evidence to support the Board's conclusion that the Union has not met its burden of negativing the General Counsel's findings. Therefore, the decision and order of the Board in this respect will be enforced.

## II. *The Finding of Agency.*

The Pension Trust was established pursuant to a collective-bargaining agreement between the Union and several employers' associations for their contractor-members. Its principal features are set forth in the margin.[1] On the basis of these features the Board ruled that the Pension Trust was an agent of the Union and ordered it, as an agent, to accept the Union's $1,147.30 payment for credit to Amato's account and to administer the account as though the payment was made by an employer-contributor.

■ It is generally agreed that both agents and trustees are fiduciaries, but there are significant differences between the two. An agent acts for and on behalf of his principal and subject to his control. A trustee acts for the benefit of the beneficiaries of the trust; he is an agent only if he agrees to hold title for the benefit and *subject to the control* of another. Restatement 2d, Agency § 14B; Restatement 2d, Trusts § 8. Unless the Union can be said to

1. The Trust Agreement provides that the Trust shall be irrevocable and funded by employer contributions required by the collective-bargaining agreements. It is administered by ten trustees, half of whom are appointed by the Union, half by the employers. The Union can remove any or all of their appointees at any time, for any reason, by serving the affected parties with a signed written instrument. Although the provisions of the Trust Agreement itself may be amended at any time by agreement of the employers and the Union, subject to the terms of the collective-bargaining agreements, law or regulation, and another section of the Trust Agreement not pertinent here, only the trustees can amend the Pension Trust itself.

have control of the operations of the Trust, the Trust should not be treated as the Union's agent.

We can find nothing in the record which suggests that the Trust works for or is subject to the control of the Union. The Trust Agreement provides that the Trust is to be administered by the trustees for the exclusive benefit of those active or retired employees covered by the Union's pension plan. The Union has the power to appoint and remove one-half of the Board of Trustees, but a majority of the Board is required to transact the Trust's business. Moreover, the Trust Agreement expressly restricts the ability of the Union to become involved in the Trust's affairs by providing that neither the Trust nor the Union shall assume liability for the other's debts or obligations, and that the trustees shall not alter the Trust to allow the reversion of any funds to the employers or the Union.

These provisions make it abundantly clear that the founders of the Trust intended that neither the Union nor the employers should gain unfettered command of the Trust, but that control should be shared between them. Without evidence showing that these provisions have been ignored and the Union is in fact controlling the Trust, we must conclude that the Board erred in its finding of agency.

III. *The Power of the Board to Order the Pension Trust to Accept and Administer Back Pay Contributions From the Union on Behalf of Discriminatee.*

It is also urged by the trustee intervenors that the Board is without authority to order the Pension Trust to accept the Union's contribution on Amato's behalf, since accepting such payments would violate Section 302 of the Labor Management Relations Act, as amended, 29 U.S.C. § 186, which makes it unlawful for an employer or employers' association to agree to "pay, lend, or deliver, any money or other thing of value" to any "labor organization, or any officer or employee thereof, which represents, seeks to represent, or would admit to membership, any of the employees of such

employer . . . ." This argument misconceives the scope of the statute and the evils it was designed to eradicate.

Section 302 was intended to regulate payments by employers to employee representatives, and was aimed at forestalling practices Congress considered injurious to the collective bargaining process such as bribery of employee representatives by employers, extortion by employee representatives, and the potential abuse of power by union officials armed with sole control of welfare funds. *Arroyo v. United States,* 359 U.S. 419, 79 S.Ct. 864, 3 L.Ed.2d 915 (1959). The case at bar involves a payment by a union to an existent trust account as part of a Board ordered back pay award. The mischief which Section 302 was designed to eliminate is clearly not present under these circumstances, and there is no need to invoke the safeguards of this statute. *See, Independent Association of Mutual Employees of New York v. The New York Racing Association,* 398 F.2d 587, 591 (1968). Furthermore, Section 302(c)(2) provides an exception permitting payments of a judgment or proper award, so that the Board's order would probably be proper even if the facts indicated that Section 302 applied.

The trustees further contend that accepting the payments pursuant to the Board's order would endanger the Trust's tax exempt status to the prejudice of the Trust and its beneficiaries. This argument is founded in the incontrovertible proposition that for an employee pension trust to maintain its tax exempt position, it must be established by an employer for the exclusive benefit of his employees or their beneficiaries. I.R.S. Regs. 1.401(a)(3)(ii). From this it is reasoned that because Amato was not employed during the period for which the back payments are to be made, he would be a non-employee beneficiary. This jeopardizes the tax exempt status of the Pension Trust, it is concluded.

This argument is without merit. The Pension Trust had received payments on Amato's behalf and credited them to his account as an employee beneficiary for nine

years prior to the unfair practices which instigated this proceeding. The Board's order simply requires the crediting of funds received from the Union to that account so that Amato's pension benefits will not be diminished as a result of the Union's misbehavior. This order operates retrospectively, and serves to correct the effects of unfair practices from their inception. *Agwilines, Inc. v. National Labor Relations Board,* 87 F.2d 146, 151 (5th Cir. 1936). Amato, therefore, never lost his status of employee-beneficiary of the Pension Trust.

The trustees made one telling point in regard to the possibility that they might incur extra administrative expenses in the process of restoring Amato's pension rights. Amato's damages are unquestionably the responsibility of the Union, not the Fund, and the Fund should not be put to any administrative burdens which it would not have suffered had Amato not been subjected to discrimination. Therefore, the Board's order should be modified to clearly state that the Union shall be responsible for any penalties and additional administrative costs resulting from the restoration of Amato's pension rights.

The Board's order should be enforced in part, reversed in part, and modified in part consistent with this opinion.